IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KEITH RALPH CRAMER,<br><br>Defendant. | ORDER AND MEMORANDUM DECISION DENYING MOTION FOR REDUCTION IN SENTENCE<br><br>Case No. 2:18-cr-201-TC |

Prisoner Keith Ralph Cramer moves this court for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), asking for an order reducing the remainder of his five-year sentence of incarceration to time served and imposing a home-confinement condition of supervised release. He bases his motion on his concern that he may suffer serious medical complications from having contracted the COVID-19 virus.

Given the record before the court, Mr. Cramer has not satisfied the statute's "extraordinary and compelling reasons" criteria for early release. Accordingly, his motion is denied.

## **FRAMEWORK FOR COMPASSIONATE RELEASE ANALYSIS**

Mr. Cramer brings his motion under 18 U.S.C. § 3582, as amended by the First Step Act[1]

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

1

(often referred to as the compassionate release statute). According to the statute, the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that … extraordinary and compelling reasons warrant such reduction ... and that such a reduction is consistent with applicable policy statements by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The factors under 18 U.S.C. § 3553(a) include the nature of the crime, the defendant's characteristics and history, the danger to the public, and the sentencing range.

Before Congress passed the First Step Act, only the Bureau of Prisons (BOP) could bring a motion under § 3582 requesting that the court reduce a prisoner's sentence. Now the court may consider the issue either upon a motion from the BOP or "upon motion of the defendant after the defendant has fully exhausted all administrative rights" with the BOP. Id. § 3582(c)(1)(A) (emphasis added). If the BOP has not filed a motion on the defendant's behalf, the defendant, to be eligible for the court's consideration of his motion for release under Act, must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Id.

As noted above, the statute requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission[.]" Id. That phrase has given rise to disagreement about the court's discretion to define "extraordinary and compelling reasons."

The statute does not define "extraordinary and compelling reasons." But the United States Sentencing Commission (USSC) defined it before Congress passed the First Step Act, when Congress mandated that the USSC, "in promulgating general policy statements regarding

the sentencing modification provisions in section 3582(c)(1)(A) of title 18, <u>shall describe what should be considered extraordinary and compelling reasons</u> for sentence reduction, including the criteria to be applied <u>and a list of specific examples</u>…." 28 U.S.C. § 994(t) (emphasis added).

Following the mandate, the USSC, in the United States Sentencing Guidelines (USSG), issued that policy statement in USSG 1B1.13, which describes the circumstances allowing a court, upon motion by the BOP, to reduce a defendant's term of imprisonment. The Policy Statement requires a finding that "[e]xtraordinary and compelling reasons warrant the reduction" or that "the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" USSG 1B1.13(1)(A)–(1)(B). The Policy Statement also calls for a conclusion that "[t]he defendant is not a danger to the safety of any other person in the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG 1B1.13(2). And, along similar lines, the Policy Statement requires the court to balance the § 3553(a) factors.

In the Commentary Application Notes, the USSC defines "extraordinary and compelling reasons" in terms of the defendant's (A) medical condition,[2] (B) advanced age,[3] (C) family circumstances,[4] or (D) "Other Reasons." USSG 1B1.13 Commentary Application Notes 1(A)-

---

[2] The "Medical Condition" category applies when the defendant is (1) "suffering from a terminal illness," (2) "suffering a serious physical or medical condition," (3) suffering a serious functional cognitive impairment," or (4) "experiencing deteriorating physical or mental health because of the aging process," and the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13 Commentary Application Note 1(A)(i)-(ii).
[3] The "Age" category requires that "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG 1B1.13 Commentary Application Note 1(B).
[4] "Family Circumstances" consist of "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children," or "(ii) The incapacitation of the defendant's spouse

(D). The "Other Reasons" catch-all provision simply says, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG 1B1.13 Commentary Application Note 1(D).

The Policy Statement has not been amended since the First Step Act was passed, so the USSC has not yet weighed in on the change. Still, the United States, in its opposition to Mr. Cramer's motion, relies on the Policy Statement, arguing that it is controlling even when the defendant, not the BOP, files the motion: "In light of the statutory command that any sentence reduction be 'consistent with applicable policy statements issued by the Sentencing Commission, § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well." (U.S. Opp'n to Mot. for Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A) ("U.S. Opp'n") at 10 n.1, ECF No. 40.)

This court has held, in a non-COVID-19 case, that the Policy Statement does not curtail its discretion to determine what circumstances are extraordinary and compelling under § 3582. In United States v. Maumau, the court

> join[ed] the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide Mr. Maumau with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement. Under the First Step Act, it is for the court, not the Director of the Bureau of Prisons, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence.

No. 2:08-cr-758-TC, 2020 WL 806121, *4 (D. Utah Feb. 18, 2020), stayed pending appeal, No. 20-4056 (10th Cir. June 1, 2020). In this and other districts, courts have reached the same

---

or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG 1B1.13 Commentary Application Note 1(C).

4

conclusion when addressing motions raising COVID-19-related reasons for release.

> Since the onset of the COVID-19 pandemic, many courts "have agreed that [extraordinary and compelling] reasons exist in cases involving defendants whose serious underlying health conditions place them at an elevated risk of infection and death from COVID- 19 while in custody." United States v. Lopez, No. 18-CR-2846 MV, 2020 WL 2489746, at *2 (D.N.M. May 14, 2020) (unpublished). Of the courts that have reached such a conclusion, several "have based their finding on the Sentencing Commission's catch-all provision for 'other' extraordinary and compelling reasons" in the Application Notes. Id. Conversely, other courts have reached this determination based on "a plain reading of § 3582(c)(1)(A) after concluding that the [relevant] policy statement no longer applies." Id. Either way, "a majority of federal district courts have found . . . that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." United States v. Perez, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) (unpublished).

United States v. Wadley, No. 2:18-cr-408-DAK, 2020 WL 3270880, at *2 (D. Utah June 17, 2020) (unpublished).

As evidenced below, the only possible outlet for the defendant under the Policy Statement is the "Other Reasons" category, which does not provide any measurable criteria. Consequently, regardless of whether the court follows the Policy Statement or simply looks to the statute, the analysis of the "extraordinary and compelling reasons" prong is essentially the same.

## ANALYSIS

Mr. Cramer has the burden to establish that he is entitled to a sentence reduction under § 3582. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Jackson, — F. Supp. 3d —, No. 1:19-cr-347 (TNM), 2020 WL 3402391, *2 (D.D.C. June 19, 2020), appeal filed, No. 20-3046; United States v. Holroyd, — F. Supp. 3d —, No. 1:17-cr-234-2 (TNM), 2020 WL 2735664, *2 (D.D.C. May 26, 2020), appeal filed, No. 20-3041. For the reasons set forth below, the court finds that he has not met that burden.

1. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

On April 29, 2020, Mr. Cramer submitted a request for release to the Warden of FCI Terminal Island where he is housed, and, as of the date he filed the motion—June 2, 2020—he had not received a response.  (See Ex. A to Mot. for Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A), ECF No. 36-1; Mot. Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A) ("Def.'s Mot.") at 1, ECF No. 36.)  Because more than thirty days have passed without response from the BOP, Mr. Cramer has satisfied the exhaustion requirement.

2. **EXTRAORDINARY AND COMPELLING REASONS**

Mr. Cramer says he "qualifies for release because he has several debilitating illnesses, and his release is consistent with the Sentencing Commission's catch-all 'other reasons' provision[.]"  (Def.'s Mot. at 9.)  Although he cites to risks presented by COVID-19, he does not assert that he is at risk for contracting the virus.  He has already tested positive.

While he was sick, he lost his sense of taste and smell, and, as of three months ago, had only recovered twenty percent of those senses.  He does not discuss any other symptoms or complications he may have suffered.  Now he is recovered.  (Reply in Supp. of Def.'s Mot. at 6, ECF No. 42.)

He emphasizes that he is not filing a "generic request for release based merely on the existence of the pandemic."  (Id. at 4.)  Instead, in a twist on the usual basis for compassionate release motions, he asserts that his "positive test in combination with other factors provides a basis for release."  (Def.'s Mot. at 9.)  By "other factors," he means, first, that his medical condition puts him at "high risk of serious complications" (Reply at 1) that could arise in the future because he contracted the COVID-19 disease, and, second, that the BOP would not be able to sufficiently treat his condition.

6

To support his assertion that he is vulnerable, Mr. Cramer lists the medical ailments he has suffered in the past and from which he suffers now.[5] (Id. at 4.) Mr. Cramer, who is 57 years old, has "a number of physical health problems, including but not limited to atrial fibrillation, pancreatitis, pneumonia by history, and neuropathy." (Def.'s Mot. at 3.) He says his medical conditions "are further exacerbated by [his] mental health conditions, which include depression and generalized anxiety disorder." (Id.) Focusing on his atrial fibrillation and the fact that he had pneumonia at some point in the past, he likens his heart and lung problems to medical conditions which, according to the CDC,[6] place a person at greater risk of serious illness or death in the event he contracts the disease. Mr. Cramer admits that "[t]here are no direct CDC factors in that list" but insists that he is "medically fragile" and so at a heightened risk of serious harm.

---

[5] The United States cites to Mr. Cramer's medical records in its sealed opposition brief. (See U.S. Opp'n to Mot. Reduce Sentence at 12, ECF No. 40.) The list of ailments the U.S. provides does not completely match the list of ailments Mr. Cramer sets forth in his motion, but the discrepancy is not material.

[6] According to the CDC, older adults and people with certain underlying medical conditions are at increased risk for severe illness, or even death. CDC, CORONAVIRUS DISEASE 2019 (COVID-19), *People Who Are At Increased Risk For Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last modified June 25, 2020). The older the person, the greater the risk. CDC, CORONAVIRUS DISEASE 2019 (COVID-19), *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Aug. 16, 2020). "In fact, 8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years and older." Id. In addition, a person of any age definitely has an increased risk of severe illness if he has one or more of following CDC-identified chronic conditions: cancer; chronic kidney disease; COPD (chronic obstructive pulmonary disease); immunocompromised state from a solid organ transplant; obesity (a body mass index (BMI) of 30 or higher); serious heart conditions such as heart failure, coronary artery disease, or cardiomyopathies; sickle cell disease; and type 2 diabetes mellitus. CDC, CORONAVIRUS DISEASE 2019 (COVID-19), *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 14, 2020). Finally, the CDC has determined that the following chronic conditions *might* put a person at higher risk: asthma, hypertension (high blood pressure), type 1 diabetes mellitus, and pulmonary fibrosis (damaged or scarred lung tissues). Id.

(Reply at 4–5 (contending that "[h]is many issues are not unlike having one or two of the CDC listed vulnerabilities").)

The court has found in other cases that if the defendant's underlying medical condition puts him at risk for severe illness or death if he contracts the virus, that is an extraordinary and compelling reason under the statute. But the court has not addressed the issue of whether an inmate with multiple medical conditions who has already contracted and recovered from the virus has provided an extraordinary and compelling reason for early release.

Documented vulnerability to serious harm if the person contracts the virus—which this and other courts have found to be a valid reason for release—is different than the uncertain risk of future complications once a person has recovered from the virus. Mr. Cramer says his partial recovery of his sense of taste and smell is "a sign of a neurological abnormality" and surmises that the virus may have caused other damage. (Id. at 5 ("Who knows what other damage has been done by the virus.").) But, as even he emphasizes, the circumstances are filled with doubt: "Even though he may be considered one of the recovered, as someone who has already been infected, there is *no medical certainty* as to whether or not this grants long-term immunity … and *no understanding* as to the long term implications of having had the disease[.]" (Id. at 6 (emphasis added).)

Mr. Cramer is certainly correct that "[v]ery little is known about this coronavirus [and] no one can say that he will *not* have a serious long term issues [*sic*], because he has been infected." (Id. at 5 (emphasis added).) But that is the problem. No one can say that he *will* have serious long term issues that justify release *now*. His fear that he may not have complete immunity, or that he might suffer an unidentified complication that could result in serious illness or death, is not supported by evidence and, consequently, is speculative.

8

Additionally, his concern that FCI Terminal Island does not have the ability to care for his future medical needs, whether separately or in combination with his COVID-19 illness, does not provide additional support for his contention that he is entitled to compassionate release. He does not present evidence that he is currently suffering from a serious health problem caused by the disease. And although he provides examples of delays in care that he should be receiving, none relates to his COVID-19 infection. The same can certainly be said of his claim that nothing has been provided to support his continued sobriety, such as AA meetings and religious services.

In short, the record simply does not contain evidence that Mr. Cramer's current circumstances warrant early release. Accordingly, for all the reasons stated above, the court finds he has not met his burden to establish an extraordinary and compelling reason for sentence reduction.

### 3. CONSIDERATION OF FACTORS IN 18 U.S.C. §§ 3142 AND 3553

Because Mr. Cramer has not established an extraordinary and compelling reason under the first prong of the analysis, the court need not determine whether the factors in § 3142 and § 3553 weigh against his release.

### ORDER

For the foregoing reasons, Defendant Keith Ralph Cramer's Motion for Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 36) is DENIED.

DATED this 15th day of September, 2020.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge